## RANKIN v. PITKIN ET AL.

1. **Election**: CONSTRUCTION OF STATUTE. The word "error," as employed in section 627 of the Code, is used in the sense of excess.

2. ———: EXCESS OF BALLOTS. The fact that an excess of ballots appears to have been cast will not authorize the board of supervisors to order a new election for a particular office, for the filling of which no more than the number of legal votes were cast.

*Appeal from Van Buren Circuit Court.*

## TUESDAY MARCH 18.

THE petition states that the plaintiff and R. L. Clarke were candidates for the office of county treasurer at the election held in Van Buren county, in the year 1877, and—

"5. That at the election precinct of Keosauqua, Van Buren county, Iowa, there were cast for said office of county treasurer votes as follows, to-wit:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| R. L. Clarke, | - | - | - | - | - | - | 204 |
| Thomas Rankin, | - | - | - | - | - | - | 109 |
| Clark, | - | - | - | - | - | - | 2 |

"6. That the whole number of voters on the poll lists, as shown by the returns, was three hundred and fifteen; that the whole number of ballots tallied in said precinct were three hundred and eighteen, as is shown by the returns and certificate of the judges of said election precinct; that there were three votes polled and tallied in excess of the voters on the poll lists, which facts are fully certified to, and returned in writing by the judges of said election and duly attested, as by law provided.

"7. That if said R. L. Clarke were deprived of the vote of the said precinct of Keosauqua the said plaintiff would have a majority of the votes for said office."

It is also stated that the board of supervisors proceeded to make the canvass as required by law, and declared the result

to be that R. L. Clarke was duly elected to said office by a majority of two votes.

The relief asked was that a writ of *mandamus* issue to compel the defendants, the board of supervisors, to order a new election in said precinct. Such relief was granted by the Circuit Court, and the defendants appeal.

*Lea & Beaman* and *Gillmore & Anderson*, for appellants.

*Trimble & Baldwin* and *Work & Brown*, for appellee.

SEEVERS, J.—The question for determination involves the construction of section 627 of the Code. It provides: "If the ballots for any officer are found to exceed the number of the voters in the poll lists, that fact shall be certified with the number of the excess in the return, and if it be found that the vote of the precinct where the error occurred would change the result in relation to a county officer, if the person elected were deprived of so many votes, then the election shall be set aside as to him in the precinct where such excess occurs, and a new election ordered therein; * * * but if the error occur in relation to a township officer, the trustees may order a new election or not, in their discretion. If the error be in relation to a district or State officer, the error and the number of the excess are to be certified to the State canvassers, and if it be found that the error would affect the result as above, a new vote shall be ordered in the precinct where the error happened, and the canvass shall be suspended until such new vote is taken and returned. When there is a tie vote and such an excess, there shall be a new election as above directed."

1. ELECTION: construction of statute.

It is claimed on the one hand, and, as we think, properly conceded on the other, that the meaning of the word "error," as used in the statue, would be more accurately expressed if the word "excess" had been used. The latter will be, therefore, used hereafter in the place and stead of the former.

That there were three illegal votes cast in Keosauqua pre-

cinct, and if the same are deducted from the votes cast for 2. ——: ——: R. L. Clarke, as found and determined by the board of canvassers, he would not have a major-ity, must be conceded. It, however, is not certain that any illegal votes were cast for the office of county treasurer. In fact it is impossible to ascertain whether any such votes were cast for any of the candidates for said office. It is made cer-tain by the allegations of the petition that there were no more votes cast or counted for the candidates for said office than there were names of voters on the poll lists.

*excess of bal-lots.* [margin note]

The question, then, is whether it is the duty of the board of supervisors to "set aside the election" as to said office, and order a "new election" in said precinct, unless there was an excess of ballots as to that particular office.

Much stress is laid by the appellee on the words "any offi-cer" in the first line of the section above set out in full. He claims that if "any officer" has an excess of ballots a new election must be ordered. On the other hand it is insisted the words aforesaid mean "any officer" for whom the excess of ballots are cast. In order to determine the proper con-struction the whole section must be considered. It is pro-vided: "If the excess be in relation to a district or State officer the excess and the number of the excess shall be certi-fied to the State canvassers, and if it be found that the excess would affect the result as above a new election shall be ordered."

It is apparent, we think, there must be an excess of ballots for *some* State or district officer. This much is quite clear. The language of the statute expressly requires, before a new election can be ordered as to a State officer, that it must appear there was an excess of ballots "in relation to a district or State officer." If it were certified, therefore, to the board of State canvassers that there was an excess of ballots as to a county or township officer, or simply that there was such an excess, without the statement required by the statute that such excess of ballots was "in relation" to a district or State

officer, it would not be the duty of such canvassers to order a new election as to any officer who, if the excess were deducted from the votes received by him, would be in the minority.

It is equally clear that, before an election can be ordered as to a township officer, there must have been an excess of ballots "in relation to a township officer."

While the language used in relation to a county officer is not precisely the same as in relation to State or township officers, still we think the meaning is the same. It cannot, with fairness, be claimed that a different construction should be adopted as to State and township officers from what should prevail as to county officers. For such a construction no reason could be given except that the express words of the statute required it.

It is quite clear, from what has been said, that a mere excess of ballots does not vitiate the election. Something more than this is required. Recurring, then, to the first line of the section and to the words "any officer," we are of the opinion that such designation refers to any district, State, county or township officer, and that "any officer" means any one or more of the several classes for whom there is found to be an excess of ballots. In other words, "any officer" means such officer or officers for whom an excess of ballots are cast. In such case the statute does not require, before a new election is ordered, that it should be made to appear the officer having the majority received any of the ballots so cast in excess of the names on the poll list. But it is conclusively presumed such excess was cast for him, and if it changes the result a new election must be ordered.

The correctness of this construction is aided by the thought that if the legislative intent had been to invalidate an election in case there was an excess of ballots, without reference to what officer the same were cast for, the language used to express such intent would probably have been as follows: "If the ballots are found to exceed," etc. The insertion of the words "any officer" after ballots changes the meaning of

the sentence quite materially, and aids, we think, the construction we have adopted.

The foregoing views render it unnecessary to determine the other questions discussed by counsel, and also render it unnecessary to refer to the vote in Hamburg township. The result is, the judgment of the Circuit Court is

REVERSED.